**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:16-CV-00121-JHM**


**RICHARD ESCALERA**                                                                    **PLAINTIFF**


**VS.**


**BARD MEDICAL, A DIVISION OF C.R. BARD, INC.**                           **DEFENDANT**


**MEMORANDUM, OPINION,**
**AND ORDER**

## I. INTRODUCTION

This matter is before the Court on Plaintiff Richard Escalera's motion to compel (DN 23). Defendant Bard Medical, a Division of C.R. Bard, Inc. filed a response (DN 27), and Escalera replied (DN 32). The motion is therefore ripe. Bard has responded to nearly all of Escalera's discovery requests with boilerplate language and vague, evasive responses. For this reason and all the reasons that follow, Plaintiff's motion is granted.

## II. NATURE OF THE CASE

Escalera was a salesperson for Bard Medical for approximately eight years. In 2015, Escalera's sales numbers dropped, and the Defendant placed him on a Personal Improvement Plan (PIP). The PIP required Escalera to hit certain benchmarks to keep his job. Escalera fell short of these benchmarks, and defendant fired him. On this much, at least, the parties agree. But Escalera has now brought this employment discrimination case against Bard Medical, alleging discrimination on the basis of color and national origin.

Escalera is an individual of "dark complexion" and of Mexican descent (DN 23 at PageID # 135).  At this point, his primary allegations are: 1) that Bard Medical treated him differently from similarly situated white employees because of his national origin and race; and 2) that Bard Medical used Escalera's PIP performance as a pretext for firing him when decision makers knew that circumstances beyond Escalera's control had caused his poor performance (DN 32 at PageID # 618).  With regard to the first allegation, Escalera alleges that he was fired while ranked twenty-second of twenty-two employees in 2015 sales while Eric Kunzinger, a white employee, received a promotion after being ranked twentieth of twenty-two employees (DN 23 at PageID # 139).  With regard to the second allegation, Escalera alleges that much of his poor performance in 2015 was the result of back orders and withdrawals of certain medical devices.  Escalera states the Defendant refused to allow him to use withdrawn products as part of evaluations with new customers.  However, Escalera alleges the Defendant approved white employees' requests to use the withdrawn products with new customers (DN 23 at PageID # 138).

## III. SUMMARY OF ARGUMENTS

Escalera seeks information falling into several categories.  First, Escalera requests documents relating to the sales performance, assignment of PIPs, and remedial actions against underperformers for all Bard salespersons working for the Interventional Urology (IVU) division from 2010 until Escalera's termination (DN 23 at PageID # 145-46).  In addition to performance metrics and PIP information, Escalera requests the race, color, national origin, and sex of all IVU division salespersons from 2010 through the time of Escalera's termination for purposes of identifying potential comparators.  Escalera also specifies that he would like a detailed performance history of employee Eric Kunzinger, a white salesman who was ranked only two spots ahead of Escalera in 2015 yet was promoted.

Bard responds that it has already provided responses to the relevant requests for potential comparators for all employees reporting to Escalera's supervisor, Brad Smith, from 2013 through the present (DN 27 at PageID # 412). According to Bard, information dating back to 2010 and involving salespersons from other districts with different supervisors would not provide relevant information, and such "unfettered nationwide discovery" amounts to a fishing expedition (DN 27 at PageID # 412). Bard objects to the relevance of any potential information from these other districts because Brad Smith was responsible for terminating Escalera, and the actions of other supervisors are not relevant to Escalera's discrimination claims (Id. at PageID # 415).

Next, Escalera requests customer data for his customers, including information about product trials continuing even after his termination (DN 23 at PageID # 158). Escalera argues the information is directly relevant to demonstrating that his inability to meet the requirements of his PIP were beyond his control (Id.). Bard responds that the data is highly sensitive, highly confidential, and voluminous (DN 27 at PageID # 421). Bard further contends that, even if Escalera's "abysmal performance in 2015" were the result of circumstances beyond his control; these events are not relevant to a claim of racial discrimination (Id.)

Escalera next objects to Bard's assertion of privacy concerns where Escalera has requested personal information about current and past employees (Id. at 160-61). The specific requests at issue are Requests for Production of Documents Nos. 34 and 38 as well as Interrogatories Nos. 1-3, 5, and 15-18 (Id.). Escalera argues that he is entitled to learn the names and contact information of persons associated with the case, and a protective order, like the one in place in this case, should be sufficient to protect these individuals' privacy interests. Bard responds that the protective order does not eliminate privacy concerns from the proportionality analysis (DN 27 at PageID # 425-26).

Escalera finally outlines several issues with individual requests that he maintains are not fully responsive (DN 23 at PageID # 161). First, in request for production No. 16, Plaintiff seeks the policies or written guidance governing the withdrawal of the Skylite Basket and Solo Wire as well as any documents governing customer evaluations of those products. Similarly, in RFP No. 50, Escalera asked for documents relating to requests by salespersons in the IVU division to use certain products for trial purposes when the products were not available for sale (DN 23 at PageID # 162). In RFP No. 52, Plaintiff seeks documents relating to clients King's Daughter's and the Louisville VA's decision to stop using Bard products (Id.). In RFP No. 53, Escalera requested documents reflecting client Maury RMC's testing of Boston Scientific products as well as Maury's decision later in 2015 to continue using Bard products (Id. at PageID # 163). Finally, Escalera desires more information relating to RFP No. 60, which concerned documentation verifying (or not) the claim that Plaintiff performed at 99.8% of target in the third quarter of 2015 as compared with Kunzinger's 85.2% (Id. at PageID # 163).

In response, Bard first argues that Plaintiff's request for information about the Skylite Basket could not lead to relevant information (DN 27 at PageID # 424). Bard offers similar denials of relevance for the other RFPs. Bard further argues that it properly limited its responses to the overbroad requests (Id. at PageID # 426). Finally, Bard notes it has agreed to search its backup tapes for additional relevant information subject to limitations as agreed upon by the parties (Id.).

With regard to Plaintiff's requests as a whole, Bard argues that engaging in the depth of document production requested by Escalera is unduly burdensome (Id. at PageID # 424-25). Bard has projected that the requested discovery will cost an estimated $86,261.15 (Id. at PageID # 425). Moreover, Bard contends the effort involved in retrieving the requested documents will

cost its company unquantifiable human resources (Id.). Finally, Bard contends that, while an agreed protective order is in place, privacy concerns should nonetheless be considered in the burden analysis and support the Defendant's position.

Escalera's reply (DN 32) argues Defendant's assessment of burden doesn't square with Plaintiff's actual requests (Id. at PageID # 624). Escalera contends he does not seek a nationwide fishing expedition. Rather, his requests are limited to the IVU division. Furthermore, Escalera takes issue with Bard's claim that it will need to search some 415 employees. Plaintiff asserts that, given that the sales rankings suggest there have been only forty-six total employees in IVU since 2012, it is highly unlikely that another two years would yield an additional 369 employees (Id.). Notably, Escalera states that, by way of compromise, he will limit the inquiry to employees in the IVU dating back only to 2012, rather than 2010 (Id.).

## IV. DISCUSSION

### A. STANDARD OF REVIEW

Rule 26(b)(1) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Thus, "[i]nformation is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed.R.Civ.P. 26, Advisory

Committee's Note for 2015 Amendment. Notably, district courts within the Sixth Circuit have agreed that the 2015 amendments do not change the basic principle that Rule 26 is to be liberally construed to permit broad discovery. *See e.g.* He v. Rom, No. 15-CV-1869, 2016 WL 5682012, at *13 (N.D. Ohio Oct. 3, 2016); Suzette Scott-Warren v. Liberty Life Assurance Co. of Boston, 3:14-CV-00738-CRS-CHL, 2016 WL 5661774, at *5 (W.D. Ky. Sept. 29, 2016); Brooks v. Caterpillar Global Mining Am., LLC, No. 4:14-CV-00022-JHM, 2016 WL 5213936, at *7 (W.D. Ky. Sept. 20, 2016); Albritton v. CVS Caremark Corp., 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016). Certainly, the movant bears the burden of demonstrating relevance, but that threshold is relatively low due to the purpose of the Civil Rules. Albritton, 2016 WL 3580790, at *3 (citations omitted).

Proportionality cannot be demonstrated using boilerplate language. Waters v. Drake, 222 F.Supp.3d 582, 605 (S.D. Ohio, 2016). Instead, it is the moving party's obligation to explain the need for the information, demonstrate why obtaining the information would be a judicious use of resources, and offer an explanation why compliance would not be burdensome. Id. (internal citations and quotations omitted). "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26, Advisory Committee Notes to the 2015 Amendment. Finally, if the moving party demonstrates that the requested information is relevant, the opposing party bears the duty of demonstrating why compliance would be unduly burdensome. Anderson v. Dillard's, Inc., 251 F.R.D. 307, 311 (W.D. Tenn., 2012).

## B. RECORDS OF EMPLOYEES ACROSS THE IVU DIVISION

As discussed above, Escalera's primary stated reason for wanting information across the entire division is to identify potential comparators. In an action for employment discrimination, the plaintiff must establish a prima facie case that the employer acted in a discriminatory manner through either direct or circumstantial evidence. Johnson v. Kroger Co., 319 F.3d 858, 864-65 (6th Cir. 2003). There are many "context-specific" means of establishing a prima facie case. Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007). One way is to provide examples of similarly situated persons (comparators) outside the protected class who were treated more favorably than the plaintiff. Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001)

After establishing a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate, non-discriminatory explanation for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Proffering a legitimate reason for the action shifts the burden back to the Plaintiff, who must then demonstrate that the employer's asserted reason is pretext for discriminatory conduct. Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 812 (6th Cir. 2011). "Although a plaintiff can prove pretext in several ways, evidence '[e]specially relevant to such a showing' is proof that an employer treated similarly situated Caucasian employees differently when they engaged in acts of comparable seriousness." Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 303 (6th Cir. 2016) (quoting McDonnell Douglas, 411 U.S. at 804). Comparators are therefore potentially relevant to showing both a prima facie case and pretext.

Here, Escalera seeks as broad a pool as is reasonable from which to locate similarly situated Caucasian employees who exhibited close to the same performance deficiencies but

were not placed on a PIP, fired, or both.  As mentioned above, Bard objects, arguing that other salespersons in the IVU would not be similarly situated comparators because they did not work for Brad Smith.  Whatever weight this argument may have is better suited for a motion in limine or summary judgment.  The Sixth Circuit has held that the same supervisor inquiry should not be an automatic and inflexible criterion.  Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 751 (6th Cir. 2012).  The Court in Bobo made it abundantly clear that it amounts to an improper denial of discovery to allow the defendant, who controls the employee information, to self-select comparators.  "The refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine."  Id. at 353.  Additionally, both parties engage in an extended discussion of the same supervisor requirement as discussed in Louzon v. Ford Motor Co., 718 F.3d 556 (6th Cir. 2013).  The undersigned concludes, however, that it would be inappropriate at this stage of the litigation to attempt to divine whether other employees within the IVU are or are not valid comparators.  Indeed, in the portion of Louzon addressing motions to compel, the Sixth Circuit reaffirmed its holding from Bobo that it is inappropriate to attempt to determine whether hypothetical comparators are valid during discovery.  Id. at 567.

The undersigned concludes that Plaintiff's requests for information concerning other employees in the IVU is far from a "nationwide fishing expedition" and is proportional to the needs of this case.  Plaintiff has agreed to accept information dating back to 2012 rather than 2010.  Therefore, this Court will order Bard to produce responses beginning in 2012 for all salespersons in the IVU.  This should naturally include the requested information about Eric Kunzinger as well.

## C. CUSTOMER DATA AND PRODUCT TRIAL INFORMATION

The next issue is whether Escalera is entitled to information about his sales performance, previous customers, and product trials. With regard to sales performance, as noted above, Escalera must present a prima facie case of discrimination. This includes a showing that he was otherwise qualified for his position. Here, the parties dispute whether Escalera was qualified. Of course, then, documents relating to his actual performance, communications of Bard's expectations, disciplinary actions, discussions of termination, job training, PIP, Etc. are all relevant and proportional. Additionally, Plaintiff's request for these documents dating back to 2010 is reasonable. Escalera alleges Brad Smith engaged in discriminatory behavior. Smith became Escalera's supervisor in 2013. Two plus years of Escalera's performance history prior to Smith's becoming supervisor is reasonable and in no way unduly burdensome. Defendant is therefore ordered to produce this information. The specific requests requiring further attention are as follows: Requests for Admission Nos. 7-9 and 13; Requests For Production Nos. 14, 17-19, 25-26, 32-34, 36-38, 42, 49; Second Request for Production of Documents No. 9; and Interrogatories Nos. 11, 13-17.

Information concerning Escalera's customers is a slightly closer issue. Escalera specifically objects to Bard's response to Requests for Production Nos. 51, 57, 61, and 62. RFP 51 requests purchase orders and contracts with Escalera's customers (DN 23-13 at PageID # 306). RFP 57 requests documents showing the monetary value of business done with Pikeville Medical Center from June 15, 2015, through December 31, 2015 (Id. at PageID # 308). RFP 61 requests documents illustrating sales of the Skylite basket in 2015, including the customer's name and the salesperson credited with the sale (Id. at 309). RFP No. 62 requests documents

reflecting any customer evaluations of the Skylite Basket, the name of the customer, the date of the evaluation, and whether the customer was charged for the basket (Id. at 310).

Plaintiff has alleged that, to the extent his performance was deficient in 2015, it was a result of Bard's actions. Resolution of this allegation may well turn on whether other salespersons in the IVU division were indeed allowed to demonstrate products, while Escalera was denied such opportunities. Moreover, the requested customer information could assist the parties in resolving Escalera's allegations that Bard's tactics stalled sales in a manner that caused him to fall short of his performance goals. The requests are proportional. Escalera does not seek detailed sales information about every employee. Rather, he seeks only the information concerning his own customers. The exception to this is Escalera's request for information about sales of the Skylite basket, but Plaintiff has offered a specific theory to support that request.[1] Finally, Bard has failed to put forth a showing that complying with these requests would be unduly burdensome. Bard is therefore ordered to supplement its responses to the above mentioned RFPs.

## D. OBJECTIONS TO SPECIFIC INTERROGATORIES AND REQUESTS FOR PRODUCTION

The next issue is Bard's refusal to provide information about other employees. The disputed RFPs and interrogatories that Escalera has specifically identified are RFPs Nos. 34 and 38 as well as interrogatories Nos. 1-3, 5, and 15-18. RFP 34 requests document related to Bard's criteria for promotion, including documents related to Eric Kunzinger's promotion (DN 23-13 at PageID # 300). Plaintiff has expressed that one theory of its case centers on Eric Kunzinger,

---

[1] The undersigned has considered Bard's privacy concerns, but they do not hold water. A protective order is in place in this case. Documents can be sealed if need be, and the majority of Escalera's requests ask for customer information for customers he dealt with directly. Notwithstanding the protective order and other safeguards against accidental dissemination of sensitive information, it stands to reason that Escalera has likely already seen much of this information anyway.

who was also near the bottom of Plaintiff's district yet nevertheless received a promotion. The proof (or not) of this theory requires a working understanding of how Bard selects employees for promotion and how Eric Kunzinger's promotion fit within that scheme. As discussed above, Plaintiff is entitled to information concerning similarly situated employees. Whether the evidence will demonstrate that Eric Kunzinger is a proper comparator or whether his promotion will support a disparate treatment theory is unknowable at this time, and that is exactly why Escalera is entitled to a response to RFP No. 34.

RFP No. 38 requests Eric Kunzinger's performance reviews from 2010 through 2015 (DN 23-13 at PageID # 302). This request is a logical outgrowth of RFP 34 discussed above. Performance reviews of Eric Kunzinger for the same time period Escalera was with Bard would assist in determining whether or not the two employees are similarly situated. *See* Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1116 (6th Cir. 2001) (citing performance reviews as one factor in determining whether other employees were similarly situated); Hatton v. Ford Motor Co., 508 F.Supp. 620, 622 (1981) (race discrimination case discussing Plaintiff's performance reviews and comparing them with similarly situated employees). Bard's assertions that the request is overbroad and violations of privacy are without merit. This appears to be a reasonable and routine request, and Bard is ordered to produce the requested performance reviews.

Interrogatories 1-3 ask for routine information regarding who Bard contacted in the preparation of its responses to the interrogatories and who might have knowledge of the circumstances leading to Escalera's termination (DN 23-14 at PageID # 313-17). Bard responds with boilerplate objections including grounds of attorney-client privilege (Id.). However, Bard then goes on to respond to all three interrogatories with names of individuals. While a party may

withhold privileged information, the Rules require the withholding party to "[d] escribe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Bard's responses do not comply with the Federal Rules, and Bard is ordered to amend its responses to include either a privilege log or alternatively an explanation that its responses are complete to the best of its knowledge.

Interrogatory No. 5 seeks the "full name, address, telephone number, employer and employer's address [of] all persons (not expert witnesses previously identified by you) whom you or your counsel may call to testify as witnesses at trial of this action, and provide a summary of each witnesses' expected testimony" (DN 23-14 at PageID # 317). Bard goes on to offer yet another boilerplate objection invoking attorney-client privilege and work product protections without explaining these objections. Moreover, Bard apparently believes the names and telephone numbers of potential witnesses constitute "an unwarranted invasion of the personal privacy of individuals who are not parties to this lawsuit" (Id. at PageID # 318). A party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). Thus, no matter how sensitive its witnesses' telephone numbers and addresses may be, Bard is nonetheless ordered to produce them.

Interrogatories Nos. 15-18 concern issues similar to those already addressed. No. 15 asks for the names and contact information of all of Escalera's supervisors during his time with Bard, not just Brad Smith (DN 23-14 at PageID # 329). It should go without saying that Plaintiff

may wish to establish certain facts about his performance history, and one means of doing this is by interviewing those who supervised him before Brad Smith. Defendant is ordered to respond.

Interrogatory No. 16 asks for a list of employees who worked for Escalera's various supervisors, or in other words his coworkers (DN 23-14 at PageID # 329). Again Bard asserted boilerplate objections and provided the names of only Brad Smith's supervisees. The undersigned has already discussed the relevance of potential comparators, and the employees requested in this interrogatory fit squarely into that pool. Bard is therefore ordered to respond. If Bard does not maintain any data about its employees' race or national origin, then it can say as much in its new response.

Interrogatory No. 17 asks for information regarding employees in Escalera's division who were selected for promotion, the criteria for those promotions, and why those persons were denied a promotion, if they were nominated or applied but did not receive the promotion (DN 23-14 at PageID # 330-31). Defendant offered no information in response but did include a boilerplate objection. Defendant's objections are without merit. The inconsistent application of criteria for promotion is one of many ways to demonstrate disparate treatment. *See* Upshaw v. Ford Motor Co., 576 F.3d 576, 585 (6th Cir. 2009). Plaintiff is therefore entitled to determine if this occurred, and Defendant is ordered to produce the requested information.

Finally, Interrogatory No. 18 requests information about who has been hired to replace Escalera since his termination as well as those persons' race, color, national origin, and sex (DN 23-14 at PageID # 331). Defendant responds with more boilerplate objections, but it provides at least the name Jason Miller (Id. at PageID # 331-32). Defendant is ordered to provide contact information for Mr. Miller. Additionally, to the extent it has the information, Defendant is ordered to provide his race, color, national origin, and sex.

To conclude, the undersigned has endeavored to respond fully to Plaintiff's motion (DN 23). However, this has been difficult because of the motion's organizational structure. Escalera sometimes discusses categories of information and at other times enumerates specific objections to specific responses. But one fact is clear. Bard has stymied discovery with its refusal to answer obviously relevant requests and near constant assertion of boilerplate objections. Thus, if there is a specific interrogatory or request for production that has somehow been overlooked, the parties should endeavor to apply the findings set forth in this order to the particular undiscussed written request.

## ORDER

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel (DN 23) is GRANTED.

**IT IS FURTHER ORDERED** that Defendant shall supplement its responses to Plaintiff's interrogatories and requests for production **by no later than October 9, 2017**.

Copies:        Counsel